Christopher Lee WHITE, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–99–00190–CR.

Court of Appeals of Texas, Texarkana.

Submitted Aug. 1, 2001.

Decided Aug. 9, 2001.

Robert M. Burns, Luis A. Merren, Jr., Dallas, for appellant.

Martin E. Braddy, Asst. Dist. Atty., for Sulphur Springs, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

Christopher Lee White was convicted as a party to capital murder. His punishment was set by the trial court at confinement for life.

White raises four main points on appeal in which he alleges that (1) the record is fatally incomplete, (2) the trial court erred in instructing the jury on the use of notes taken during the trial, (3) the trial court erred in excluding an out-of-court statement made by the principal defendant to a third party, and (4) the evidence is legally and factually insufficient to support the verdict. We overrule all these contentions and affirm the judgment.

■ White first alleges there is a fatally incomplete record. He explicitly refers to the fact that missing from the record are State's Exhibit 138A (a videotape of White), Defense Exhibit 1 (a videotape of the principal, Joey Ries, who was tried separately), and Defense Exhibit 2 (another videotape). All of these exhibits have now been made a part of the appellate record by a supplemental reporter's record. Thus, this omission has been cured. White also complains because some notes that the jurors took at trial have not been included in the appellate record, but we have concluded that these notes are not needed for the reasons we discuss later in this opinion.

White next asserts that the trial court insufficiently instructed the jury "regarding its taking of notes during the trial." Apparently some of the jurors took notes during the trial, although there is no evidence of what was contained in the notes, or if they were used by any of the jurors, and if so, in what way.

We note that White did not object in any way or at any time during the trial to the taking of notes by the jurors. Nor did he raise that issue in his motion for new trial or in any post-trial motion or hearing.

Before the charge was read to the jury, the court asked counsel if there were objections to the charge. White's counsel answered, "The whole charge." Defense counsel then specifically objected to paragraphs three and six, a portion of page four relating to conspiracy, paragraph seven, and then paragraph thirteen, which is the charge on the use of jury notes. The objection to paragraph thirteen was solely to the jurors being allowed to take their notes with them into the jury room during their deliberations. The trial court denied the objections.

■ Paragraph thirteen of the court's charge relating to jury notes reads as follows:

> You have been permitted to take notes during the testimony in this case. In the event any of you took notes, you may rely on your notes during your deliberations. However, you may not share your notes with the other jurors and you should not permit the other jurors to share their notes with you. You shall not use your notes as authority to persuade your fellow jurors. In your deliberations, give no more and no less weight to the views of a fellow juror just because that juror did or did not take notes. Your notes are not official transcripts. They are personal memory aids, just like the notes of the judge and the notes of the lawyers. Notes are valuable as a stimulant to your memory. On the other hand you might make a mistake in recording what you have seen or heard. Therefore, you are not to use your notes as authority to persuade fellow jurors of what the evidence was during trial.

White concedes that the trial court's charge on the use of notes substantially

complies with the Texas Court of Criminal Appeals' directions in *Price v. State*, 887 S.W.2d 949 (Tex.Crim.App.1994). We find the trial court's instruction sufficient.

■ White also complains because the trial court refused his request to collect the jurors' notes and forward them to the appellate court. Because White makes no complaint about the taking of the notes and has provided no evidence that notes were actually made, or if so, what, if any, use was made of them, there was no need to send the notes to the appellate court. To show harm from the taking of notes the appellant must show that the jurors actually took and *used* their notes during deliberations. *See* id. at 951. White has wholly failed in this regard.

■ White also complains because the trial court failed to admonish the jurors throughout the trial about the proper taking and use of jury notes. Error in this regard has not been preserved as White nowhere objected to this alleged failure.

■ White next contends that the trial court erred in refusing to allow him to introduce a portion of a statement by a person named McCoy, who did not testify in this trial, to the effect that Ries, the principal defendant, had made an out-of-court statement to him (McCoy) that Ries had been "staying with a guy and the guy was kicking him out. And he threatened him with a weapon. So sometime after the guy had gone to sleep he had gone in there and shot the guy. That's all Joey told me."

The trial court correctly refused to admit this out-of-court statement by a third party, because the statement by Ries that he shot Robert Ratliff was clearly cumulative. The jury had already seen the videotaped statement of Ries himself, in which he clearly admitted that he shot Ratliff. The admission of this out-of-court state-

ment of a third party, in addition to being cumulative, would have opened up the possibility of a sub-trial on the knowledge and credibility of McCoy, and would have confused the issues at trial here. The identity of Ries as the person who shot Ratliff was not an issue in this trial. It was undisputed that Ries was the person who shot Ratliff.

White seems to imply that Ries' nonstatement, i.e., he did not implicate White, should have been admitted before the jury. We disagree. Ries' failure to implicate White, if it can be considered as a statement or as a non-verbal assertion, was clearly hearsay. It was not admissible under the statement against penal interest exception to the hearsay rule because it was in no way calculated to incriminate Ries, who had already admitted killing Ratliff. *See* Tex.R.Evid. 803(24).

White argues that the excluded out-of-court statement was admissible because it was offered only to prove that it was said, and not for the truth of the matter asserted. We disagree. The only possible relevance the out-of-court statement would have in this case would be to prove the truth of Ries' statement that he personally killed Ratliff. *See* Tex.R.Evid. 801(d).

■ Finally, White contends the evidence is legally and factually insufficient to support his conviction as a party to the capital murder of Ratliff. In determining the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict to see if any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Teer v. State*, 923 S.W.2d 11 (Tex. Crim.App.1996). In determining factual sufficiency, we view all of the evidence in a neutral light and set aside the verdict only if it is so against the overwhelming weight

of the evidence as to be clearly wrong and unjust. *Clewis v. State,* 922 S.W.2d 126 (Tex.Crim.App.1996). The "other reasonable hypothesis" test formerly used in circumstantial evidence cases is no longer used. *See Brown v. State,* 911 S.W.2d 744 (Tex.Crim.App.1995); *Roberts v. State,* 963 S.W.2d 894, 898 (Tex.App.—Texarkana 1998, no pet.).

We find the evidence legally and factually sufficient to support White's conviction. This is not a circumstantial evidence case, because we have abundant direct evidence which, if believed by the jury, is sufficient to support White's conviction. Direct evidence shows that White and Ries first stole Ratliff's truck. They then returned to Ratliff's home intending to steal his automobile. When they arrived back at Ratliff's house they burglarized the house, taking various items, including clothing and firearms. Although Ratliff's car was at the house, the men could not start it. They agreed to wait until Ratliff returned home so they could get the keys to the automobile. Both men contemplated that one or both of them would go into the house and get the keys. While they waited for Ratliff to return home, they discussed killing Ratliff. White told Ries to go ahead and kill Ratliff himself. White was in the house and watched Ries fire the third bullet into Ratliff. White helped Ries clean up shell casings in the house after Ratliff was shot. White and Ries then fled to Oklahoma in Ratliff's car.

Of course there is some evidence conflicting with that discussed previously, raising an inference that Ries acted alone in killing Ratliff. There is testimony that only Ries had a dispute with Ratliff and that Ries killed him over that dispute rather than as a part of the burglary and theft in which White participated. Then, there are the statements that Ries allegedly made to others that he shot Ratliff, but

that he never mentioned White being involved. This evidence, however, pales into insignificance when compared to the direct evidence from both Ries and White himself that can reasonably be construed to show that White and Ries agreed to the burglary and the thefts and to the killing of Ratliff as a part of those transactions. There is abundant evidence which, if believed by the jury, proves that White was guilty as a party to the capital murder of Ratliff.

For the reasons, stated we affirm the judgment of the trial court.